

**UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND**

Chambers of
J. Mark Coulson
U.S. Magistrate Judge

101 West Lombard Street
Baltimore, Maryland 21201
MDD_JMCChambers@mdd.uscourts.gov
Phone: (410) 962-4953
Fax: (410) 962-2985

August 3, 2020

LETTER TO COUNSEL

RE: *Emily B. v. Commissioner, Social Security Administration*
Civil No. JMC- 8:19-cv-01558

Dear Counsel:

On May 28, 2019 Emily B-H ("Plaintiff") petitioned this Court to review the Social Security Administration's final decision to deny her claim for Disability Insurance Benefits. (ECF No. 1). The Court has considered the parties' cross-motions for summary judgment. (ECF Nos. 11 & 19). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2019). The Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, the Court will DENY Plaintiff's Motion (ECF No. 11) and GRANT the Defendant's Motion (ECF No. 19). This letter explains my rationale.

Plaintiff filed her claim for Disability Insurance Benefits ("DIB") on October 6, 2015. (Tr. 159–160). She alleged a disability onset date of April 1, 2015. (Tr. 158, 164). Her claims were denied initially and again on reconsideration on May 17, 2016. (Tr. 85, 91–93, 95). A hearing was held on March 19, 2018 before Administrative Law Judge ("ALJ") Thomas Mercer Ray. Following the hearing, ALJ Ray determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 17). The Appeals Council declined review, and thus, the ALJ's decision is the final reviewable decision of the SSA.

In arriving at the decision to deny Plaintiff's claim, the ALJ followed the five-step sequential evaluation of disability set forth in the Secretary's regulations. 20 C.F.R. § 416.920. "To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work." *Mascio*, 780 F.3d at 634–35. If the first three steps do not yield a conclusive determination, the ALJ then assesses the claimant's residual functional capacity ("RFC"), "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work," by considering all of the claimant's medically determinable impairments regardless of

1

severity. *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The claimant bears the burden of proof through the first four steps of the sequential evaluation. If he makes the requisite showing, the burden shifts to the Social Security Administration at step five to prove "that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (internal citations omitted).

In this case, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability April 1, 2015. (Tr. 20).

At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: degenerative joint disease, degenerative disc disease, rheumatoid arthritis, and obesity. (Tr. 20). Despite these impairments, the ALJ determined that the Plaintiff retained the residual functional capacity ("RFC") to:

> Perform light work as defined in 20 CFR 404.1567(b) except the claimant could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. The claimant could stand or walk for a total of 2 hours in an 8-hour workday. She could sit for a total of 6 hours in an 8-hour workday. She could push or pull as much as she could lift and carry. The claimant frequently needs a cane in order to ambulate. She could occasionally climb ramps or stairs, and should never climb ladders, ropes, or scaffolds. The claimant could frequently balance and stoop, occasionally kneel, crouch, and crawl. The claimant could frequently reach overhead. She could tolerate occasional exposure to vibration. (Tr. 24)

After considering the testimony of a vocational expert ("VE"), the ALJ determined that, Plaintiff is capable of performing past relevant work as a Service Support specialist, Dictionary of Occupational Titles ("DOT") 201.362-030, Specific Vocational Preparation 6, sedentary exertion. (Tr. 30). The ALJ determined "[t]his work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565)." *Id.* Accordingly, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from April 1, 2015, through the date of this decision. (Tr. 30).

Plaintiff raises two primary arguments on appeal: (1) the ALJ erroneously assessed the Plaintiff's RFC; and (2) the ALJ erroneously evaluated the Plaintiff's subjective complaints. (ECF No. 11-1).

### *The ALJ's RFC Determination is Supported by Substantial Evidence*

In support of her contention that the ALJ erroneously assessed her RFC, Plaintiff asserts three sub-claims. These claims are: (1) the ALJ failed to set forth a narrative discussion setting forth how the evidence support each conclusion, citing specific medical facts and nonmedical evidence; (2) the ALJ failed to perform a proper function-by-function analysis; (3) the ALJ failed to properly evaluate pertinent evidence. (ECF No. 11-1). These claims are addressed in-turn.

Plaintiff first argues that the ALJ failed to set forth a narrative discussion to support his findings within the RFC. Generalizing, Plaintiff claims that the ALJ failed to explain how he determined any of the limitations within Plaintiff's RFC. (ECF No. 11-1 at 6). Social Security regulations require an ALJ to "identify the [claimant's] functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." *Mascio*, 780 F.3d at 636. To satisfy the function-by-function analysis requirement, the ALJ must include a "narrative discussion of the claimant's symptoms and medical source opinions" to support the RFC determination. *White v. Comm'r, Soc. Sec. Admin.*, Civ. No. SAG–16–2428, 2017 WL 1373236, at *1 (D. Md. Apr. 13, 2017) (internal citation and quotations omitted). In doing so, an ALJ must "build an accurate and logical bridge from the evidence to his conclusion." *Petry v. Comm'r, Soc. Sec. Admin.*, CV SAG-16-464, 2017 WL 680379, at *2 (D. Md. Feb. 21, 2017) (citing *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)), *as amended* (Dec. 13, 2000).

Here, the ALJ provided a six-page narrative as to Plaintiff's RFC, alone, in which he summarized Plaintiff's written statements and hearing testimony, made a credibility determination, reviewed Plaintiff's diagnostic laboratory testing and medical imaging, discussed Plaintiff's medical records, considered the objective evidence of record, and weighed the opinion evidence. (Tr. 23–29, 29). Thus, contrary to Plaintiff's contention, the ALJ did identify evidence that supported his conclusion and built a logical bridge from that evidence to his conclusion. Plaintiff's latest iteration of this recycled boilerplate argument is entirely inapplicable. *See Patrick M. v. Comm'r, Soc. Sec. Admin.*, No. 1:18-CV-03030-JMC, 2019 WL 5291395, at *3 (D. Md. Oct. 18, 2019), *Powell v. Comm'r, Soc. Sec. Admin.*, No. CIV. SAG-11-790, 2013 WL 2300971, at *2 (D. Md. May 23, 2013).

Regarding Plaintiff's next argument, that the ALJ failed to perform a proper function by function analysis, Social Security regulations require an ALJ to "identify the [claimant's] functional limitations or restrictions and assess his . . . work related abilities on a function-by-function basis." *Mascio*, 780 F.3d at 636. Plaintiff argues that the ALJ failed to address Plaintiff's abilities to sit, stand, walk or lift and carry objects before he concluded that the Plaintiff was capable of performing the exertional demands of light work. (ECF No. 11-1 at 8). To the contrary, the ALJ provided an extremely thorough analysis as to all of Plaintiff's abilities, and alleged functional limitations thereto. The ALJ premised his conclusion that Plaintiff would be able to perform a reduce range of light exertional activity, with postural and manipulative and environmental restrictions, on "the record as a whole." (Tr. 26). The ALJ recognized that Plaintiff's imaging studies "support some mild to moderate impairment in function," however, the ALJ concluded "the level of limitation caused by the [Plaintiff's] musculoskeletal conditions would not preclude the performance of a reduced range of light exertional activity." (Tr. 26). The ALJ determined that "[a]s for the claimant's upper extremity functioning, the undersigned finds that the shoulder imaging supports some limitations on reaching, however, her capacity to use her upper extremities to handle, finger, and feel does not seem affected by her conditions." (Tr. 28). The ALJ also recognized that Plaintiff's obesity likely affects her capacity to perform exertional activity, including postural movements, reaching, and performing some manipulative actions, however, the ALJ concluded that these limitations would not be work preclusive. (Tr. 28). The ALJ substantiated his opinions with extensive citations to Plaintiff's medical records. (Tr. 21–30).

In addition to the objective medical evidence of record, the ALJ explicitly considered Dr. Rubarb's statements[1] as to Plaintiff's exertional capacity, including his opinion as to Plaintiff's limited ability to sit, stand, and walk, and provided his opinion with little weight. (Tr. 29). *Id.* Plaintiff does not otherwise challenge this. It is thus readily apparent that the Commissioner specifically contemplated Plaintiff's abilities. *See Reid v. Comm'r, Soc. Sec. Admin.*, 769 F.3d 861, 866 (4th Cir. 2014). The ALJ acknowledged that Plaintiff testified about relying upon a cane at all times to get out of her home, however he determined that the "[e]vidence does not establish a medical need for the cane, outside of Dr. Rubarb's statement that she uses an assistive device." (Tr. 28). As described below, the ALJ adequately reviewed Plaintiff's subjective complaints. Despite the ALJ's determination that Dr. Rubarb grossly overstated Plaintiff's limitations, and the inconsistencies within Dr. Rubarb's report, the ALJ included several of the limitations outlined by Dr. Rubarb in the RFC, specifically Dr. Rubarb's determination that Plaintiff could only stand two out of eight hours of the day. (Tr. 29). As the ALJ supported his conclusions with substantial evidence, there is no basis for reweighing his conclusions. *See e.g., Lawrence D. v. Soc. Sec. Admin.*, No. 18-CV-00253-SAG, 2018 WL 6344250, at \*4 (D. Md. Nov. 9, 2018).

Finally, Plaintiff asserts that the ALJ failed to properly evaluate pertinent evidence. (ECF No. 11-1 at 9). Plaintiff argues that "despite this evidence" the ALJ failed to include any limitation upon the Plaintiff's abilities to handle, finger or feel in his RFC "without explanation." Plaintiff is mistaken in this assertion, as the ALJ explicitly considered the cited evidence. (Tr. 21–30). Further, substantial evidence in the record cited by the ALJ supports his conclusion that Plaintiff's "capacity to use her upper extremities to handle, finger and feel does not seem affected by her conditions." (Tr. 28). *See, e.g.,* (Tr. 26) ("She maintained normal, full reflexes, sensation and strength."), (Tr. 26) (noting Plaintiff's physical examination dated September 4, 2015, by Dr. Thomas showed 5/5 musculoskeletal motor strength in deltoids and intact light touch in the upper extremities), (Tr. 26) ("Of note, her musculoskeletal examination showed normal motor strength findings and her neurological examination showed intact sensation to light touch. . . . Dr. Thomas characterized the claimant's pain levels as 'quite manageable' . . . ."), Tr. 27 ("While she complained of joint pain, her examinations revealed full range of motion of the extremities, without edma or deformities."). The ALJ complied with the Social Security rules and regulations in conducting the RFC assessment, and remand is unwarranted.

## *The ALJ Adequately Considered Plaintiff's Subjective Complaints*

Second, Plaintiff contends that the ALJ erroneously evaluated her subjective complaints. (ECF No. 11-1 at 10). This is premised on the similar contention that the ALJ's credibility assessment was not supported by substantial evidence. *Id.* at 11–13. The evaluation of a claimant's credibility as it relates to their subjective complaints of pain or other symptoms caused by their impairments is a two-step process. *Craig*, 76 F.3d at 594. First, the ALJ must determine

---

[1] The ALJ discussed Dr. Rubarb's medical source statement which "lists the claimant as having rheumatoid arthritis and opines the claimant has a 'fair prognosis.' The physician listed the claimant's subjective reports of pain, as well as objective swelling of feet, limited range of motion of the neck, hips, and shoulders as rationale for his findings." (Tr. 29). Dr. Rubarb opined the claimant could "rarely lift less than ten pounds, and was limited to standing, sitting, and walking less than two hours in an eight-hour workday." *Id.* Dr. Rubarb also opined that Plaintiff could rarely climb stairs, and never stoop, bend, crouch, squat or climb ladders. (Tr. 29). The doctor opined that Plaintiff was unable to perform any meaningful work.

whether there is objective evidence showing the existence of a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Nazelrod v. Astrue*, 2010 WL 3038093, at *3 (D. Md. Aug. 2, 2010). Second, the ALJ must evaluate the intensity and persistence of the claimant's pain or other symptoms alleged based on all the evidence in the record, including the claimant's testimony. *Id.* The ALJ must specifically refer to evidence informing his conclusion, including the reasons for rejecting evidence which contradicts his findings. *See, e.g.*, *Gordan v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984) (remanding because the ALJ failed to adequately explain basis of findings). An explanation is particularly critical when evaluating subjective symptoms. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

The ALJ found that "[o]verall, the claimant's medical records do not support the extent of limitation alleged by [Plaintiff]." In coming to this conclusion, the ALJ "exhaustively reviewed the evidence of record and finds that Plaintiff's allegations as to pain severity and functional impairment are not consistent throughout the record." (Tr. 28).

The ALJ conducted an extensive evaluation of the intensity and persistence of Plaintiff's pain, and the extent to which such affect her ability to work. *Craig*, 76 F.3d at 585. In doing so, the ALJ specifically referred to evidence informing his conclusion, including: Plaintiff's subjective complaints, laboratory findings, treatment records, medical records, examination findings, and evaluations. *See, e.g.*, (Tr. 27) ("While she complained of joint pain, her examination revealed full range of motion of the extremities, without edma or deformities."), (Tr. 28) ("She complained of difficulty concentrating on more than one thing at a time; however, her records show that she reports good medication compliance and medication effect. She did not complain of side effects outside of in her function report and complaints at hearing."), (Tr. 28) ("The objective evidence does not support [Plaintiff's] complaints of limiting side effects associated with her prescribed medications. The evidence, particularly considering the repeated statement to Dr. Roberson that the medication was effective, that she remained complaint, and denying untoward side effects, does not support the claimant's statement regarding side effects of medication."). There is no error where an ALJ "articulate[s] which of a claimant's individual statements are credible, rather than whether the claimant is credible as a general matter." *Armani v. Comm'r, Soc. Sec. Admin.*, No. JMC-14-cv-976, 2015 U.S. Dist. LEXIS 57236, 2015 WL 2062183, at *1 (D. Md. May 1, 2015).

The ALJ also addressed how the conservative nature of Plaintiff's treatment history, and her lack of compliance therewith undermined her credibility. (Tr. 21–30). *See Dunn v. Colvin*, 607 Fed. App'x 264, 273 (4th Cir. 2015) ("This Court has long held that it is appropriate for the ALJ to consider the conservative nature of a plaintiff's treatment—among other factors—in judging the credibility of the Plaintiff."). In forming his conclusion, the ALJ adequately explained why he did not fully credit Plaintiff's subjective complaints, as they were inconsistent and unsupported throughout the record. Thus, the ALJ applied the correct legal standards and substantial evidence of record supports his findings.

Because there is substantial evidence to support the ALJ's findings and the findings were reached through application of the correct legal standards, Plaintiff's Motion for Summary Judgment (ECF No. 11) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 19) is GRANTED, and the Social Security Administration's judgment is AFFIRMED pursuant to

sentence four of 42 U.S.C. § 405. The clerk is directed to CLOSE this case. Despite the informal nature of this letter, it is an Order of the Court and the Clerk is directed to docket it as such.


/s/
J. Mark Coulson
United States Magistrate Judge